**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD K. COLLINS** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. C2-05-461** |
| | : | |
| *v.* | : | |
| | : | **JUDGE MARBLEY** |
| **OHIO DEPARTMENT OF JOB AND** | : | |
| **FAMILY SERVICES, et al.,** | : | |
| | : | |
| **Defendants.** | | |

## ORDER AND OPINION

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Motion for Inclusion of Additional Exhibits to his Response to Summary Judgement. Plaintiff Richard K. Collins ("Collins" or "Plaintiff"), a former employee of the Ohio Department of Job and Family Services ("ODJFS"), brings this employment discrimination action *pro se* against Defendants ODJFS and several of its officials ("Individual Defendants"). Plaintiff alleges that Defendants disciplined and fired him on account of his race, gender, religion, age, and disability status. He further alleges that ODJFS and Individual Defendants retaliated against him because he complained about such discrimination. He seeks damages and reinstatement to his former position at ODJFS.

For the reasons stated herein, Defendants' Motion for Summary Judgement is

**GRANTED**.  Plaintiff's Motion to Include Additional Exhibits is **GRANTED**.[1]

## II. BACKGROUND

Plaintiff is an African American male who was 41 years old when ODJFS terminated his employment.  In October 1992, the Department of Human Services (later ODJFS[2]) hired Plaintiff as an Administrative Assistant.  ODJFS promoted Plaintiff to Hearing Officer I of the Bureau of State Hearings (BSH)[3], and later to Hearing Officer II.  Ruben Lopez ("Lopez"), a Latino male, became Collins' immediate supervisor in October 1998.  Lopez and all of the other Hearing Officer Supervisors in BSH report to Christopher Barley ("Barley"), who became the Bureau Chief in 1997.

After Barley became the Chief, Plaintiff states that BSH became a hostile work environment for minorities.  Plaintiff alleges that ODJFS records show that Barley only disciplined minority employees, even though minorities comprise less than half of the department's staff.[4]  He also asserts that Barley and Defendant Virginia Ringel ("Ringel") told Lopez to discipline minority employees more harshly than others.  Lopez filed an Equal Employment Opportunity complaint after Defendants told him to treat minorities more harshly, and the complaint was settled by a confidential agreement.  Plaintiff further alleges that Barley

---

[1]This Court has reviewed the additional exhibits and finds that they are largely irrelevant to the case.

[2]The Department of Human Services merged with the Ohio Bureau of Employment Services effective July 1, 2000, becoming the Ohio Department of Job and Family Services.

[3]BSH is a subpart of ODJFS.

[4]Plaintiff's exhibits R and S are internal documents from BSH.  They show that all disciplinary action and reprimands from 1998-2001 were against African American male and female employees.  Between 2002 - 2004, all "discipline imposed" was against African American employees, through two Caucasians also received "reprimands."

hired Caucasians over more talented and experienced minority applicants.

Plaintiff complained that ODJFS and its officers discriminated and retaliated against minority employees on account of their race.  In September 2002, Barley ordered Plaintiff not to contact two African American support staff, who had been assigned to him.  Barley said that Collins was preventing them from completing their work.  Collins later received an unsolicited email from one of the support staff saying that Collins did not prevent her from doing her job. Plaintiff complained that Barley's actions were racist, and in response Barley verbally disciplined Plaintiff for alleging that Barley's actions were racially motivated.

In October 2002, Plaintiff met with the ODJFS Assistant Director to discuss alleged racial discrimination at BSH.  Collins complained to the Assistant Director that Barley and Ringel, Barley's former Assistant Chief, were intimidating him and other minorities who alleged racial discrimination in BSH.

After this meeting, Plaintiff contends that Ringel and Barley retaliated by bringing numerous false allegations of employee misconduct against him.  In November 2002, Barley and Ringel initiated an ODJFS investigation by accusing Collins of stealing an agency telephone, allowing an agency to client pay one of his parking tickets, and abusing leave time by attending school during his work hours.  Ultimately, the ODJFS investigation found no evidence to support the allegations that Collins either stole the telephones or abused leave time.  The report did note, however, that Collins violated BSH policy by conducting state hearings from his home and with a suspended driver's license.  The report also cited Plaintiff for failure to report that a client agreed to pay a parking ticket on his behalf.

While this investigation was pending, in December 2002, Barley and Ringel again

brought allegations against Collins that he was absent without leave, failed to provide a required physicians verification, was insubordinate, and violated other agency rules.  Based on these allegations, Defendant Director Hayes ("Hayes") suspended Collins for ten days.

Approximately five months later, in April 2003, Barley and Defendant Ringel filed what Collins again believes were false allegations, including being absent without leave, insubordination, and failure to follow written policies and work rules.  Defendant Teresa Toronto ("Toronto"), Labor Relations Officer, presided over the hearing, and determined that there was just cause for discipline.  Hayes imposed a twenty day suspension, which was later modified to fifteen days.

Though these allegations led to suspensions, Plaintiff states that the hearings regarding these accusations were unfair and biased.  Collins contends that he was not given an adequate opportunity to present evidence and witnesses on his behalf, nor provided an opportunity to review all the evidence against him.  Furthermore, Defendant Sharon Ralph ("Ralph"), the union representative, failed to file a timely grievance after Collins received the ten-day suspension.

Shortly after receiving each of these suspensions, Collins filed complaints with the Bureau of Civil Rights asserting that Barley and Ringel discriminated against him.  In July 2003, the Bureau of Civil Rights found no probable cause to support Collins claims of discrimination. On September 10, 2003, Plaintiff brought a formal charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that his ten and twenty day suspensions were motivated by race and gender, and that Defendants punished him in retaliation for complaining about discrimination.  The EEOC formally dismissed Collins' charge on February 25, 2004, and notified Collins of his right to sue.

4

Throughout the period of these allegations and complaints, Defendants gave Plaintiff numerous negative performance evaluations.  For the period of October 2001 to October 2002, ODJFS rated Collins as "below target." According to the Defendants, Collins issued too many late hearing decisions and had too many open cases.  Collins pursued an internal appeal of this evaluation, which was ultimately denied.  Similarly, ODJFS gave Collins a "below target" performance evaluation for the period of November 16, 2002 to November 16, 2003, for failure to write the required number of weekly decisions over a period of five months.

Plaintiff contends that  Barley inaccurately completed these evaluations in retaliation for his complaints about racial discrimination.  For the year 2003, for example, Plaintiff issued more hearing decisions than a Caucasian female Hearing Officer II.  This employee scored a superior annual performance review.  Moreover, as evidence of his excellent performance, Plaintiff notes that Lopez assigned him supervisory duties while Lopez was on vacation in December 2003 and January 2004.

In February 2003, Plaintiff applied for FMLA leave to treat a "permanent pulmonary ailment" that "could eventually lead to death."  Plaintiff's physician wrote on the form that treatment required Plaintiff to alter his work schedule to accommodate a treatment regiment.  Plaintiff contends that Defendants, specifically Keith Nichols ("Nichols") and Kathryn Nowack ("Nowack"), intentionally ignored the form and refused to approve his request until many months later.  Defendants disagree.  They contend that immediately after Plaintiff submitted his form, they informed Collins that his physician must fill out a FMLA application.  In June 2003, after Collins submitted this application, Defendants approved the FMLA request.

The event that precipitated Plaintiff's termination occurred in January 2004.  In the

course of an email exchange regarding the settlement of his twenty-day suspension, Collins made an offensive remark to his coworker Michael Douglas ("Douglas") allegedly regarding Douglas' sexual orientation.  Collins wrote, "you [Douglas] really should take the log out of your own eye before judging me.  There's nothing more arrogant (or reprobate) than to live a lifestyle contrary to the Word, so openly, and then play gospel music all day."  According to Plaintiff, Defendants pressured Douglas to bring charges against Collins regarding this email.  Douglas was in disciplinary status just short of dismissal.  Thus, Plaintiff alleges that when Douglas' supervisor strongly encouraged Douglas to write a memo explaining that he was offended by Collins' email, Douglas did so out of fear of losing his job.

Toronto presided over a hearing regarding this incident on February 10, 2004.  Plaintiff asserted that Barley wanted to terminate Plaintiff so that Ringel, a white female, could replace him.  Toronto ultimately concluded that there was just cause for discipline.  Hayes fired Collins effective March 5, 2004.  Collins filed a grievance contesting his removal, but he lost.  ODJFS then hired Defendant Ringel for Plaintiff's position.

On June 3, 2004, Collins brought a formal change of discrimination with the Ohio Civil Rights Commission ("OCRC") alleging that his discharge was due to his race and gender, and in retaliation for complaining of discrimination.  OCRC found no probable cause to believe that ODJFS discriminated against Collins.  Similarly, the EEOC also issued a dismissal and right to sue letter to Collins in February 2005.

Collins filed this action on May 11, 2005.  This matter is before the Court on Defendants' Motion for Summary Judgment.  Plaintiff has responded and the matter is now ripe for decision.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).  In response, the non-moving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993) (citations omitted).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must interpret all reasonable inferences in the non-movant's favor.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The existence of a mere scintilla of evidence in support of the non-moving party's position, however, will not be sufficient; there must be evidence from which the jury reasonably could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587 (finding summary judgment appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

In the instant case, Plaintiff Collins is proceeding *pro se*.  As a general rule, *pro se* complaints are liberally construed.  *Haines v. Kerner,* 404 U.S. 519 (1972).  While *pro se*

plaintiffs are held to less stringent and more relaxed standards of pleading than licensed

attorneys, the Court is not required to invent and conjure up claims for *pro se* plaintiffs nor

completely ignore basic pleading rules. *McNeil v. United States,* 508 U.S. 106, 113 (1993);

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).


## VI. ANALYSIS

Plaintiff's Amended Complaint alleges seven claims against both ODJFS and Individual

Defendants: (1) discrimination based on race, gender, and religion and retaliation for

complaining about such discrimination under Title VII of the Civil Rights Act of 1964; (2) race

discrimination and retaliation for complaining about race discrimination under 42 U.S.C. § 1981;

(3) disability discrimination under the Americans with Disabilities Act ("ADA"); (4) retaliation

for taking medical leave under the Family and Medical Leave Act ("FMLA"); (5) age

discrimination under the Age Discrimination in Employment Act ("ADEA"); (6) race, religion,

gender, disability, and age discrimination under Ohio Revised Code § 4112.02 et. seq; and (7)

violation of procedural due process under 42 U.S.C. § 1983.   Plaintiff brings all these claims

against both ODJFS and each Individual Defendant.  Accordingly, this Court will analyze the

claims against Defendant ODJFS, and then against the Individual Defendants.

First, with regard to Defendant ODJFS, Plaintiff's § 1981, ADA, FMLA, ADEA, and

state law claims are barred by sovereign immunity.  Similarly, Plaintiff's § 1983 due process

claim cannot proceed against ODJFS because it not a "person" under § 1983.  Plaintiff's Title

VII race discrimination claims for disparate treatment, retaliation, and hostile work environment

are not barred, but are not meritorious.  While Plaintiff is able to establish a prima facie case for

8

these Title VII claims, he is unable to demonstrate that ODJFS's proffered reasons for disciplining and terminating him are pretextual. Therefore, this Court grants summary judgment with regard to all Plaintiff's claims against Defendant ODJFS.

Second, with regard to the Individual Defendants, this Court grants summary judgment as to all Plaintiff's claims. Plaintiff failed to exhaust his administrative remedies on his ADA and ADEA claims; thus, they cannot stand before this Court. The Title VII and FMLA claims cannot survive against the Individual Defendants, because they are not "employers" under these statutes, and thus cannot be held individually liable. As for Plaintiff's § 1981 race discrimination claim against Individual Defendants, it fails along the same analysis as Collins' Title VII claim against ODJFS. Finally, Plaintiff's § 1983 claim fails because Collins does not show how Plaintiff's termination hearing deprived him of a fair opportunity to defend himself, and thus there was no due process violation. Therefore, this Court grants Defendant ODJFS and Individual Defendants' Motion for Summary Judgment in its entirety.

## A. Claims Against ODJFS

### 1. Sovereign Immunity Bars § 1981, ADA, FMLA, and ADEA Claims against ODJFS

Sovereign immunity protects Defendant ODJFS from Plaintiff's § 1981, ADA, FMLA, ADEA, and state law claims. Sovereign immunity is rooted in the Eleventh Amendment to the United States Constitution, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has construed the Eleventh Amendment to prevent a federal court from hearing a suit brought by a citizen against his own state, or agencies of the state. This

9

immunity exists unless the state has explicitly waived its immunity or Congress has explicitly abrogated the state's immunity under its § 5 power.  *Hans v. Louisiana*, 134 U.S. 1 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  The Eleventh Amendment also shields state officials who are sued in their official capacities for monetary damages. *Kentucky v. Graham*, 473 U.S. 159 (1985).

Sovereign immunity, however, does not preclude private suits against state officers for: (1) prospective injunctive relief, or (2) monetary damages if Plaintiff sues Defendants in their "individual capacities."  *See Ex Parte Young*, 209 U.S. 123 (1908); *Graham*, 473 U.S. at 159; *Foulks v. Ohio Dept. of Rehab. and Corr.*, 713 F.2d 1229 (6th Cir. 1983).

In this case, the Plaintiff's § 1981, ADA, FMLA, ADEA, and state law claims against ODJFS are barred because the state did not waive sovereign immunity and Congress did not abrogate it.  The Sixth Circuit has established that the State of Ohio and its agencies enjoy sovereign immunity from private federal actions arising under 42 U.S.C. § 1981.  *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).  In addition, the Supreme Court established that sovereign immunity bars suits for money damages against a state and its agencies under Title I of the ADA.  *Robinson v. Univ. of Akron Sch. of Law*, 307 F.3d 409, 411 (6th Cir. 2002) (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001)).

Similarly, Plaintiff's FMLA claim against ODJFS fails due to sovereign immunity.  State agencies are protected by sovereign immunity against claims arising under Section 2612 (a)(1)(D), the FMLA self-care provision, but not against claims arising under Section 2612 (a)(1)©, the family care provision.  *Touvell v. Ohio Dept. of Mental Retardation and*

10

*Development Disabilities,* 422 F.3d 392 (6th Cir. 2005) (holding that "private suits for damages may not be brought against states for alleged violations of the [ADA] arising from claimed entitlement to leave under § 2612(a)(1)(D).").  Plaintiff applied for leave to treat his pulmonary condition.  Plaintiff mentioned that he also needed leave to take care of his father, but did not allege that he applied for FMLA leave for this purpose.  Therefore, Plaintiff's FMLA claim rests solely upon his request for self-care leave, which is bared by sovereign immunity.  Furthermore, Plaintiff's ADEA claims against ODJFS are barred by sovereign immunity.  *Kimel v. Florida Bd. of Regents,* 528 U.S. 62 (2000); *Latham v. Office of the AG*, 395 F.3d 261, 270 (6th Cir. 2005) (noting that Congress did not expressly abrogate state immunity with the ADEA).

Collins' state law claims against Defendant ODJFS are similarly barred.  *Pennhurst,* 465 U.S. at 121 (concluding, in part, that a claim that state officials acting in their official capacities violated state laws is protected by sovereign immunity).[5]  Therefore, Plaintiff's §1981, ADA, ADEA, FMLA, and state law claims cannot proceed against ODJFS.

**2.  Definition of "Persons" Under 42 U.S.C. § 1983 Bars Plaintiff's Due Process Claim**

To establish a claim under § 1983, Plaintiff must show that he was deprived of a federal

---

[5]Plaintiff's Ohio law claims are also barred against the Individual Defendants by O.R.C. § 9.86 immunity because Plaintiff has not alleged that employee's actions were "manifestly outside the scope of his employment." O.R.C. § 9.86 provides:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

right by a "person" acting under the color of state law.  42 U.S.C. § 1983.  State agencies, such as ODJFS, are not "persons" under § 1983.  *Will v. Michigan Dept. of Police*, 491 U.S. 58, 71 (1989).  Consequently, "even aside from its general Eleventh Amendment immunity, a state is beyond the reach of § 1983 as a matter of statutory construction, and cannot be liable for money damages arising from the alleged constitutional violation of its agents."  *Lupo v. Voinovich*, 235 F. Supp. 2d 782, 789 (S.D. Ohio 2002).  Therefore, Plaintiff's § 1983 claims cannot succeed against ODJFS.

### 3.  Title VII Claims Against ODJFS Fail on Their Merits

### a) Discriminatory Treatment Based on Race and/or Gender

Plaintiff alleges that Defendants discriminated against him on the basis of race and gender in violation of Title VII, 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1981.  Specifically, Plaintiff asserts that because of his race and gender, Defendants falsely accused him of misconduct, gave him poor performance evaluations, and terminated his employment.  Despite these allegations, this Court finds that the Plaintiff does not meet his burden on summary judgment to sustain a disparate treatment claim.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such an individual's race or gender.  42 U.S.C. § 2000e-2(a)(1).[6]  A

---

[6] Title VII provides:

It shall be an unlawful employment practice for an employer--
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...

plaintiff may establish a claim of discrimination under Title VII by introducing either direct evidence of discrimination or circumstantial evidence which would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572, 573 n.5 (6th Cir. 2000).

Direct evidence is evidence that is free from inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). Frequently, a plaintiff will not be able to adduce direct evidence of discrimination. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 436 (6th Cir. 2002). A plaintiff may still prevail under the circumstantial evidence approach by showing the existence of facts which "support an inference of discrimination." *Johnson*, 215 F.3d at 572.

Collins has not adduced direct evidence of discrimination, so his claim is governed by the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997). The *McDonnell Douglas* framework applies even in "mixed motive" cases. *Desert Palance, Inc. v. Costa,* 539 U.S. 90 (2003); *see also Tysinger v. Police Dep't,* 463 F.3d 569, 577-78 (6th Cir. 2006). Under this three-part test, the plaintiff must first make out a prima facie of retaliation by showing that he: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position in question; and (4) was replaced by a person outside the protected class or that a similarly-situated, non-protected class member was more favorably treated. *McDonnell Douglas,* 411 U.S. at 802; *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 402-03 (6th Cir. 1999).

Second, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to

13

articulate a legitimate, nondiscriminatory reason for the adverse action. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Alexander*, 177 F.3d at 403. Third, if the defendant meets this burden, "it is incumbent on the plaintiff to rebut the articulated reason by showing that it is not credible and is a mere pretext for discrimination." *Tysinger,* 463 F.3d at 576 (citing *Cline v. Catholic Diocese*, 206 F.3d 651, 658 (6th Cir. 1999)). A plaintiff may demonstrate "pretext" by showing that the proffered reasons had no basis in fact, that the reasons stated were insufficient to motivate the action taken, or that the reasons given did not motivate the adverse action. *Id.* (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Alternatively, the plaintiff could show that "the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)." *Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 675 (6th Cir. 2005) (citing the Court in *Carey v. Fedex Ground Package System, Inc.*, 321 F. Supp. 2d 902, 916 (S.D. Ohio 2004)). The Plaintiff bears the ultimate burden of demonstrating by a preponderance of the evidence that the discrimination was "at least *a motivating factor*" in his employer's actions. *Tysinger,* 463 F.3d at 578.

### i. Prima Facie Case of Discrimination

Collins establishes a prima facie case of race discrimination against ODJFS, but does not make a prima facie case with regard to religion or gender discrimination. His gender and religion claims fail because he does not allege specific facts with regard to gender or religion sufficient to sustain a disparate treatment claim.[7] With regard to his race claim, Defendants

---

[7]Plaintiff does not even mention his religious affiliation in his Amended Complaint, nor allege many facts relevant to gender discrimination. In addition, Plaintiff failed to exhaust his administrative remedies with regard to religious discrimination, which is grounds for granting

14

concede that Collins meets the requirements for the first three elements of a prima facie case. They argue that the Plaintiff's prima facie case fails on the element of disparate treatment because Plaintiff cannot establish dissimilar treatment of a similarly situated individual outside of the protected class.

Specifically, Defendants contend that Elizabeth Foster ("Foster"), an employee that Collins suggests ODJFS treated more favorably, was not similarly situated to him because she did not have an extensive disciplinary history or a pattern of sending offensive emails.  While Defendants are correct that Collins needs to show that a similarly-situated, non-protected employee was not given the same disciplinary action for similar offenses, they ask the Court to apply inappropriately the similarly-situated standard to Collins' claim.

To be deemed similarly situated,

> The individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating of mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Harrison v. Metro. Govt. of Nashville and Davidson County*, 80 F.3d 1107, 1115, (6th Cir. 1996).

Elizabeth Foster is a white, female Hearing Officer who had the same immediate supervisor as Collins and also sent offensive emails.  In contrast to Collins, Foster and other Caucasian employees were not terminated for sending offensive emails.  Another similarly situated employee Collins mentions is Ringel, who allegedly made derogatory marks about a Latino employee during a staff meeting.  Ringel and Collins both are under the supervision of

summary judgment on that issue, as discussed below.

Barley and face disciplinary action under the same code of conduct that applies throughout BSH. ODJFS did not similarly discipline Ringel for her derogatory comments.  Instead, Barley promoted her to Collins' job after his dismissal.

Despite these parallels, Defendants argue that Foster was not similarly situated to Collins because she did not have a history of disciplinary action against her, in contrast to Collins.  This attempt to distinguish Foster is not persuasive because Collins asserts that his past disciplinary actions were also motivated by racial animus.  This Court has previously held that an employer cannot discriminatorily "create the condition that leads to an adverse action and then use that condition against the plaintiff."  *Carey v. FedEx Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 918-19 (S.D. Ohio 2004).

In *Carey*, an African American man alleged race discrimination in applying for a delivery contract with a shipping company.  *Id.* at 905.  Defendant FedEx argued that the plaintiff could not make a prima facie case of discrimination because his back-up driver did not meet specific qualifications.  *Id.* at 913.  The Court reasoned that a reasonable jury could find that the plaintiff was not qualified because the employer discriminatorily told him that he did not need to read the Agreement that listed the back-up driver requirements.  *Id.* at 919.  Thus, "[b]ecause Plaintiff's failure to become qualified might well have been the direct result of discriminatory conduct on the part of Defendant, the Court [found] that Plaintiff has met the qualification element of his prima facie case." *Id.* (citing *Portis v. First National Bank*, 34 F.3d 325, 329 (5th Cir. 1994) (concluding that the plaintiff's poor performance could have been due to the discriminatory decision to not give her a secretary, and thus her poor performance could not be used as a basis to defeat plaintiff's sex discrimination claim)).

16

As in *FedEx* and *Portis*, Plaintiff presents facts from which a reasonable jury could conclude that Collins had a disciplinary record on account of racial discrimination.  To demonstrate the racial animus behind his disciplinary record, Collins points out that he was never the subject of  a disciplinary action before Barley became the Chief.  He notes that the ODJFS investigation found that he did not steal a phone and exonerated him of some of Barley and Ringel's false allegations.  Also, while Barley was the chief, BHS only disciplined minority employees, despite the fact that less than half the staff was from a minority race group.  Thus, like *FedEx* and *Portis*, this Court finds that Collins' disciplinary record does not negate his prima facie case.  Viewing the facts in the light most favorable to Collins, a reasonable juror could find that his blemished past was a consequence of discrimination, and therefore, race is the only apparent difference in the record between Foster and Collins.

Defendants further argue that Ringel did not replace Collins, and thus should not be counted as a similarly-situated individual who received his job.  They claim that Ringel filled a position that was open before Collins' removal.  In effect, however, Ringel replaced Collins as a Hearing Officer II.  Defendants do not show that someone else was hired for Collins' position or that the position remains open.  Defendants do not suggest any other relevant ways in which Ringel is not similarly-situated or explain why she received different disciplinary action for her derogatory remark.  Therefore, Foster and Ringel are both examples suggesting that Collins was treated differently from similarly-situated, non-protected employees, thereby establishing Collins' prima facie case of discrimination.

### ii.  Defendant's Legitimate Nondiscriminatory Explanation

The burden now shifts to the Defendants to present evidence showing that it terminated

Collins for a legitimate, non-discriminatory reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) ("The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.") (internal quotation marks and citation omitted). Defendants cite three principal reasons for terminating Collins.

First, Defendants point to Plaintiff's history of disciplinary action for insubordinate behavior and violations of ODJFS' "Standards of Employee Conduct." This explanation is supported with a variety of examples. In 1999, Collins received two and five day suspensions for insubordination. Again, in August/September 2002, Collins disobeyed a directive from Chief Barley not to contact certain employees, for which he received a verbal reprimand. Not long after, Collins received a ten-day suspension on January 3, 2003, for being absent without leave, failure to provide a physicians verification, insubordination, and failure to follow written policies and procedures. Months later, Collins received a twenty-day suspension on May 21, 2003, for violating similar standards of conduct.

Second, the Defendants justify their termination of Collins by pointing to his poor evaluations. The Defendants argue that Plaintiff's evaluations in the category of "Communicating" were "below expectation," that Collins filed too many late decisions, and that he had too many open cases at a given time. Such poor performance, they argue, gives ODJFS a rational reason to dismiss Collins.

Finally, the incident that precipitated Collins termination involved an email exchange between Collins and coworker Douglas in January 2004. In the course of the exchange, Collins

made offensive remarks to Douglas regarding his sexual orientation.  Because of this email, Collins' evaluations, and his disciplinary history, Hayes fired Collins.  This is sufficient for the burden to shift back to Collins to show that Defendants' articulated reason are pretextual.

### iii.  Pretext

Collins' does not present sufficient evidence to create a genuine issue as to whether Defendant ODJFS's proffered reasons are pretextual.  Plaintiff must "prove by a *preponderance of the evidence* that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (citation omitted and emphasis added).    Plaintiff may establish that Defendant's proffered reasons are mere pretext by demonstrating that they, *inter alia*, did not actually motivate Plaintiff's termination.  *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).  Thus, the Plaintiff must show "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup."  *Id.*  Collins attempts to counter ODJFS's reasons for dismissal, but his rebuttal is not sufficiently supported by evidence to meet this standard.

Collins contends that his disciplinary history and bad evaluations were a result of racial animus.  He alleges that Ringel and Barley brought false allegations against him and that he did not have a sufficient opportunity to defend himself in the impartial hearings, thereby resulting in his disciplinary history.  In support, Collins notes that he worked for seven years before receiving any disciplinary actions.  These actions only began when Barley became Chief.  Barley allegedly told Lopez to discipline minority employees more strictly; an issue that Lopez grieved,

19

and was settled by confidential agreement.  Plaintiff also produced ODJFS records that demonstrate that all disciplinary action taken by BSH since Barley became chief are against minority employees.  He also alleges that he received lower performance evaluations than other employees, despite the fact that he completed more hearing decisions.

Despite the strength of this circumstantial evidence, Collins does not adduce any evidence which shows that disciplinary actions Defendants brought against him were false or pretextual.  He does not produce any evidence suggesting that he did not commit the misconduct for which he was disciplined.  Nor does he produce any evidence of the impartial nature of the disciplinary hearings at which he was punished.  For instance, Collins does not explain or attach types of exonerating evidence that he would have included in his disciplinary hearings, but was not allowed.  With regard to his evaluation, Plaintiff does not submit any affidavits or other evidence suggesting that he was a good communicator, did not have too many open decisions, or otherwise rebuts ODJFS's reasons for his poor evaluations.  Thus, Collins fails to show that his disciplinary history and bad evaluations were merely pretextual reasons for a racially motivated dismissal.

Plaintiff also responds to Defendants' contention that he was fired for his offensive email to Douglas.  Collins explains that Douglas was intimidated and forced to bring charges against Collins.  Douglas' supervisor, who works directly under Defendant Barley, strongly encouraged Douglas to write a memo explaining that he was offended by Collins' email.  Douglas was in disciplinary status just short of dismissal.  Thus, Collins argues that there is a genuine issue as to whether Defendants had an ulterior motive in bringing more disciplinary action against Collins; they wanted to replace him with a Caucasian employee, Ringel.

Though these allegations suggest that Barley provoked disciplinary action based on this email, there is no evidence to support this contention.  For example, Plaintiff does not attach an affidavit from Douglas testifying to Barley's pressure on Douglas to report the email.  Plaintiff only speculates as to Douglas's motives for complaining to his supervisor.  Moreover, Collins does not deny sending a discriminatory email referencing Douglas' sexual orientation or that sending such an email, combined with past offenses, could justify termination from ODJFS.  Thus, Plaintiff fails to show that ODJFS's legitimate reasons for dismissing Collins were pretextual, and Defendant ODJFS is entitled to summary judgment on Plaintiff's Title VII disparate treatment claim.

### B) Retaliation Claim

As with disparate treatment, the Court finds that Plaintiff fails to create a genuine issue of fact on his Title VII retaliation claim.  Plaintiff alleges that Defendants disciplined and fired him in retaliation for complaining about discrimination to officials in ODJFS and for filing complaints with the EEOC and other state agencies.  Title VII protects employees who have "opposed any practice made an unlawful employment practice" by the statute, or who have made a charge under the statutory scheme.  *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1118 (6th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a) (1988))[8].

Like the disparate treatment claims analyzed above, proof of retaliation is governed by

---

[8]42 U.S.C. § 2000e-3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

the *McDonnell Douglas* burden-shifting framework. *Harrison,* 80 F.3d at 1118 (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). To successfully establish a prima facie retaliation claim, the plaintiff must show the following: "(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* (citing *Wrenn*, 808 F.2d at 500); *Hafford,* 183 F.3d at 515. If a plaintiff has established a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions, which Plaintiff must then prove to be pretextual. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000).

## I. Causal Connection Between Protected Activity and Adverse Employment Action

Defendants contend that Collins' retaliation claim fails because he cannot draw a causal connection between his complaints of discrimination and his termination and other disciplinary action. Beyond mere temporal proximity, the Defendants argue that Plaintiff has no evidence of causation. Plaintiff asserts that he repeatedly complained throughout his employment about alleged discrimination, including a formal meeting with the Assistant Director on October 10, 2002, and an EEOC complaint filed September 10, 2003. Plaintiff notes that his numerous disciplinary actions and termination closely followed his various complaints about Barley, Ringel and other employees' discriminatory action, and were unfounded and unfair.

The Sixth Circuit in *EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997), lays out the quantum of proof required to demonstrate a causal connection sufficient to establish a prima facie case of retaliation.

22

> The EEOC offers that its burden to establish a prima facie case of retaliation "is not onerous." Indeed, it "is a burden easily met." Further, to establish the element of causal link a plaintiff is required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" Accordingly, at the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.

*Id.* at 861 (internal citations omitted); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).

In evaluating a causal connection, the court often looks to temporal proximity between the protected activity and the adverse action. *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1119 (6th Cir. 1996) (citations omitted). Here, Plaintiff had a formal meeting with the Assistant Director of ODJFS in October 2002, where he complained about Barley and Ringel's discriminatory acts. Just a month later, Barley and Ringel began to file allegedly false accusations against him. In November 2002, they initiated an ODJFS investigation and then in December 2002, began a BSH internal investigation which led to Collins' ten day suspension.

Moreover, on September 10, 2003, Collins filed an EEOC Complaint alleging that his suspensions were discriminatorily imposed. Not two months later, in November 2003, Defendants gave Collins a bad evaluation that ranked him "below target." Then, approximately five months after the EEOC complaint, Defendants' held hearings against Plaintiff which ultimately led to his removal. This evidence establishes temporal proximity. *See, e.g., Harrison*, 80 F.3d at 1119 (finding temporal proximity when "[a]t most, one year and three months elapsed between his filing of a [EEOC] charge and his termination.").

Though Collins shows temporal proximity, Defendants correctly argue that temporal proximity itself is not enough to raise an inference of causation. *Nguyen v. City of Cleveland*,

229 F.3d 559, 566 (6th Cir. 2000).  For example, in *Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir. 1999), the court stated that a causal connection "may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint *and* by showing that he was treated differently from other employees." (Emphasis added.)  The plaintiff alleged that his employer constructively discharged him approximately three months after he filed and EEOC complaint.  The court reasoned that the temporal proximity coupled with the frequent discipline for trivial matters and unwarranted criticism of the plaintiff's work supported the jury's finding of retaliation.  *Id.*

In this case, Collins does not rely solely on temporal proximity to make his retaliation case.  As in *Moore*, Plaintiff also argues that he was treated differently from other employees.  Defendants did not subject other employees to the same intensity of allegedly false accusations, investigations of misconduct, and severity of punishment for similar action.  Defendants also allegedly treated him differently with regards to performance evaluations.  These allegations of disparate treatment coupled with the temporal proximity creates an inference that the Defendants retaliated against him because of his complaints of discrimination.

Having established a prima facie case, the burden shifts to the Defendants, who explain that they removed Collins' for his disciplinary history, poor evaluations, and offensive email.  Incorporating the arguments from the disparate treatment analysis above, Plaintiff does not sufficiently demonstrate that Defendants' proffered reasons were merely pretextual.  Thus, summary judgment on Plaintiff's Title VII retaliation claim against Defendant ODJFS is proper.

### C)  Hostile Work Environment

Defendant also prevails on Plaintiff's Title VII hostile work environment claim.  Plaintiff

brings a hostile work environment claim based on the multiple disciplinary actions and other mistreatment he suffered allegedly due to his race. To prove a prima facie case of hostile work environment a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race or national origin; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gold v. FedEx Freight East, Inc. (In re Rodriguez)*, 487 F.3d 1001, 1010 (6th Cir. 2007) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, (1993)). The Court examines the conduct in question by both an objective and subjective standard. *Harris*, 510 U.S. at 21-22 (stating that both a reasonable person and the victim must find the environment hostile or abusive).

In determining whether a workplace constitutes a hostile work environment, courts look at all of the circumstances, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hafford,* 183 F.3d at 512 (citing *Harris*, 510 U.S. at 23); *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997). Moreover, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Hafford*, 183 F.3d at 513 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

### i. Harassment Based on a Protected Characteristic

Defendants contend that Collins cannot demonstrate that the alleged harassment was "based on" the fact that he is African-American.  To support this contention, Defendants argue that the allegations Ringel and Barley brought against Collins, as well as the conduct of Toronto at his disciplinary hearing, were neither explicitly or inherently racial.  They also contend that Barley's comments to Collins were non-racial.

In response, Plaintiff reasserts that Defendants brought false allegations and conducted impartial hearings because of his race.  He notes that other employees were not treated with the same scrutiny or given the same punishments for similar conduct.  Before Barley became Chief, Collins testified that Barley remarked that "[African-Americans] were good in sports but [African-Americans] weren't good thinkers."  He also alleges that Barley acted with racist motives when he told Collins not to contact two African-American support staff.

Though Defendants' disciplinary actions against Collins were not explicitly discriminatory, they can still be considered as evidence of harassment when evaluated in the totality of the circumstances.  *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) (explaining that "even though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact that the plaintiff was African American"); *Betts v. Costco Wholesale Corp.*, 02-73435, 2005 U.S. Dist. LEXIS 23196, at *71 (E.D. Mich. 2005) (citing *Johnson v. UPS, Inc.* 117 Fed. Appx. 444, 456 (6th Cir. 2004) and *Landrau-Romero v. Banco Popular De P.R.*, 212 F.3d 607, 514 (1st Cir. 2000)).  In *Johnson v. UPS*, for example, the plaintiff alleged that his employer accused him of "stealing time" as part of his hostile work environment claim. *UPS,* 117 Fed. Appx. at 457.  Though this accusation did not explicitly mention race, the court

26

found that the "statement still may be considered as evidence of harassment in the totality of the circumstances." *Id.*  The court then reasoned that on summary judgment it would be reasonable to accept the plaintiff's testimony that he was not stealing time and infer that the employer's allegations were based on race. *Id.*  Simply because an action is not explicitly discriminatory, does not mean it is devoid of racial animus.

Although Plaintiff does not have to give proof of explicitly race-based actions, he still must create a genuine issue as to whether ODJFS's facially neutral actions were at least in part racially motivated.  As analyzed with respect to Plaintiff's disparate treatment claim, Collins does not create a genuine issue as to whether ODJFS's disciplinary actions were racially motivated.  He does not present sufficient evidence from which a reasonable jury could find that the disciplinary actions constituting his hostile work environment claim were not legitimately based on his misconduct, but instead on his race.  Because he does not show that the hostility was based on a protected characteristic, it is unnecessary to examine if the hostile actions were "severe and pervasive."  Thus, Plaintiff's hostile work environment claim against ODJFS must be dismissed on summary judgment.

## B.  Claims Against Individual Defendants

### 1.  ADA and ADEA Claims Are Barred for Failure to Exhaust Administrative Remedies

Plaintiff's ADA and ADEA claims cannot stand against the Individual Defendants because the Plaintiff has failed to exhaust his administrative remedies.  Exhausting administrative remedies is a condition precedent[9] to filing a suit in federal court for ADA and

---

[9]The failure to obtain a right-to-sue letter is not a jurisdictional defect; rather, the right-to-sue letter is a condition precedent that may be waived by the parties or the court.  *Rivers v. Barberton Bd. of Educ.,* 143 F.3d 1029, 1032 (6th Cir. 1998).

ADEA claims.  *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 309 (6th Cir.2000)

(ADA); *Howelett v. Holiday Inns*, 49 F.3d 189, 194 (6th Cir. 1995) (ADEA).  Thus, before

bringing suit under these statutes in federal court, a plaintiff is required to file the appropriate

discrimination charges with the EEOC.  This requirement is designed "to trigger an

investigation, which gives notice to the alleged wrongdoer of its potential liability and enables

the EEOC to initiate conciliation procedures in an attempt to avoid litigation."  *Dixon v.*

*Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).  Consequently, an employee's judicial complaint

alleging discrimination under these statutes must be limited to the scope of the EEOC

investigation reasonably expected to grow out of the EEOC charge.  *Id.* at 218.  The failure to

timely exhaust administrative remedies is an appropriate basis for dismissal.  *Irwin v. Dep't of*

*Veterans Affairs,* 498 U.S. 89, 96 (1990).

The exhaustion requirement, however, "is not meant to be overly rigid, nor should it

'result in the restriction of subsequent complaints based on procedural technicalities or the

failure of the charges to contain the exact wording which might be required in a judicial

pleading.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting

*EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).  The Sixth Circuit has

repeatedly stated that the EEOC charge "should be liberally construed to encompass all charges

reasonably expected to grow out of the charge of discrimination."  *Haithcock v. Frank*, 958 F.2d

671, 675 (6th Cir. 1992).

Thus, "where facts related with respect to the charged claim would prompt the EEOC to

investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that

claim."  *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002).  Moreover, the

Sixth Circuit has excused failure to exhaust administrative remedies when the Plaintiff quickly

remedies the problem and there is no prejudice to the Defendant. *See, e.g., Portis v. Ohio*, 141

F.3d 632 (6th Cir. 1998) (deciding not to dismiss plaintiff's sex discrimination claim for failure

to obtain a right-to-sue letter from the EEOC because plaintiff received her letter one week after

she filed the complaint and such a delay caused no prejudice).

Defendants correctly argue that Plaintiff's EEOC charges did not address age or

disability discrimination in his EEOC/OCRC charges. On June 3, 2004, Collins filed a charge

with OCRC alleging discrimination on the basis of race, gender, and retaliation. Collins checked

the boxes for race, gender, and retaliation, but not for disability or age. The Sixth Circuit,

however, has explained that a plaintiff's failure to check the appropriate box on an EEOC charge

is not dispositive of whether he or she has satisfied the exhaustion requirement. *See Dixon*, 392

F.3d at 217-18 (holding that the plaintiff successfully exhausted his administrative remedies

even though he did not check the "reprisal" box on his administrative complaint because his

description of discrimination on the EEOC form indicated retaliation). But here, Plaintiff does

not include any other language in his charge addressing disability or age. The charge states, "I

believe that I was discharged because of my race, sex, and in retaliation for having filed a

previous complaint . . . ." Nowhere in his charge does Collins even indicate that he is a

protected minority with respect to age or disability.

Furthermore, Plaintiff does not provide any explanation for why he did not exhaust

administrative remedies with regards to his age and disability claims. There is no evidence that

Plaintiff has made any efforts, even presently, to exhaust his remedies with the EEOC.

Moreover, even if this court allowed Plaintiff's ADA and ADEA claims despite this exhaustion

problem, the claims would lose on their merits as Plaintiff neither alleges that non-disabled persons were treated differently from him nor mentions his age in his Amended Complaint. Therefore, Plaintiff's ADA and ADEA claims against the Individual Defendants are dismissed for failure to exhaust administrative remedies.

### 2. Title VII and FMLA Claims Cannot Stand Against Individual Defendants Because They Are Not "Employers"

This Court must dismiss Plaintiff's Title VII and FMLA claims against the Individual Defendants because they are not "employers" under the definition of those statutes.[10] Title VII permits a person to bring a claim of discrimination in a civil action against the "employer."[11] 42 U.S.C. §§ 2000e-2(a), 2000e-5(b). In *Wathen,* the Sixth Circuit held that "Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Thus, Plaintiff's Title VII claim against Individual Defendants in their individual capacities fails as a matter of law.

The FMLA, along with other worker protection statutes, all define "employer" in essentially the same way as Title VII, and have similar liability schemes with regard to this issue. *Wathen*, 115 F.3d at 404 n.6. As a result, the Individual Defendants cannot be held liable in their individual capacities for claims arising under FMLA.

Even if Plaintiff sued the Individual Defendants in their "official capacities" under the FLMA and Title VII, these claims would lose on their merits. The Title VII claim has already

---

[10] Plaintiff's ADA and ADEA claims also fail against Individual Defendants for this reason, but they have already been dismissed for failure to exhaust administrative remedies.

[11] "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b).

30

been analyzed with respect to ODJFS and failed to create a genuine issue of fact. Plaintiff does not allege specific facts that would lead a reasonable fact finder to believe he was discharged for taking medical leave. Thus, Defendants are entitled to summary judgment on Collins' Title VII and FMLA claims.

**3. Plaintiff Fails to Meet His Burden to Sustain a § 1981 Race Discrimination Claim** As with Plaintiff's Title VII race discrimination claim against ODJFS, Collins' § 1981 race discrimination claim against the Individual Defendants also fails sufficiently to create a genuine issue of material fact. Section 1981 guarantees the right to be free from race discrimination in the making and enforcement of contracts.[12] In general, the same standards apply to claims brought pursuant to § 1981 as to claims brought under Title VII. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Thus, the Court uses the same *McDonnell Douglas* burden shifting analysis as Title VII claims, explained above. Because Collins is suing several different Individual Defendants, the Court will look at the actions of specific individuals separately to evaluate Collins' claim against each of them.

Toronto presided over several of Collins' predisciplinary hearings. Collins' alleges that she discriminated against him by not allowing him to see the evidence at issue and otherwise

---

[12]42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

fully defend himself. Despite this allegation, Collins does not explain the standard procedure for these predisciplinary hearings, or how Toronto deviated from the norm in his case. Nor does he cite other employees who received more favorable hearing procedures. Thus, Plaintiff fails to make out a prima facie case of discrimination with regards to Defendant Toronto.

Ralph, the staff representative of the Union, allegedly failed to file a timely grievance on behalf of Plaintiff to contest his ten-day suspension. She also allegedly rescheduled an arbitration hearing five times. In making these allegations, Collins does not argue that Ralph treated any other non-minorities differently with respect to grievances or arbitration hearings. Thus, Plaintiff fails to make a prima facie case of discrimination with regards to Ralph. Plaintiff's Amended Complaint suggests that Nichols and Nowark were only involved in disability discrimination, so all § 1981 race allegations are dismissed with respect to them.

Riley is the present director of ODJFS. Mullinax is Chief Legal Counsel for ODJFS. Though Plaintiff sues both Riley and Mullinax in their individual capacities, he does not mention any specific action or involvement that they had in his discrimination. Thus, they are dismissed from this action.

The remaining Individual Defendants, Hayes and Ringel, had active roles or supervisory positions in Plaintiff's suspensions and terminations, but Plaintiff also fails to defeat summary judgment with regards to them. This Court decided above that Plaintiff failed to show that ODJFS' legitimate reasons for disciplining and terminating Collins' were pretextual. The analysis of Defendants Hayes and Ringel under § 1981 parallels this Court's evaluation of Plaintiff's Title VII race discrimination claim against ODJFS, as both statutes use the same standard and implicate the same set of facts. Thus, it is unnecessary for the Court to separately

analyze this claim, and summary judgment should be granted to the Individual Defendants on Plaintiff's § 1981 claim.

**4.  Plaintiff's Due Process Claim Under 42 U.S.C. § 1983 Fails on its Merits**

The last remaining claim against the Individual Defendants is Plaintiff's procedural due process claim, which also fails to defeat summary judgment.  At issue is whether Plaintiff received sufficient opportunity to defend himself against termination at his pre-removal hearing. Plaintiff contends that his due process rights were violated because the hearing was based on violating ODJFS Work Rule F14 (prohibiting discrimination), but he was ultimately fired for violating Work Rule F2 (prohibiting rude and abusive emails).  Defendants argue that it is irrelevant that Collins was charged with an F14 violation and disciplined for an F2 violation because both charges stemmed from the same workplace misconduct.

Plaintiff argues that he did not have an opportunity to address the F2 violation, and consequently did not get a proper pre-removal hearing.  Plaintiff relies on *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.,* 45 Fed. Appx. 354 (6th Cir. 2002), to support this argument.  In *McDaniel*, the Sixth Circuit found that a teacher was denied due process because she was fired for charges not brought before her in her pre-removal hearing.  *Id.* at 359.  Her termination letter made specific charges that she "lacked lesson plans, lacked student behavior plans, and inappropriately disciplined students."  *Id.* at 358.  The court reasoned, "as none of those charges were mentioned in the Notice sent to Plaintiff, Plaintiff had no opportunity to respond to those charges prior to her termination."  *Id.*  Thus, they found that she was denied due process.  *Id.* at 359.

As Defendants acknowledge, the *McDaniels* court emphasized the importance of a

plaintiff's opportunity to respond to the evidence underlying one's termination.  *Id.*  ("The critical element . . . is the opportunity for the employee to respond to the employer's evidence.") (citing *Buckner v. City of Highland Park*, 901 F.2d 491, 495 (6th Cir. 1990)).  Unlike in *McDaniels*, Collins was afforded the opportunity to respond to all the evidence used against him, mainly the email he sent to Douglas.  Collins admits that ODJFS confronted him with the email at the hearing.

In *Lourdermill*, the Supreme Court set forth the minimum requirements for procedural due process in termination hearings.  *Cleveland Bd. of Educ. v Loudermill*, 470 U.S. 532 (1985). The Court stated that such a hearing "need not definitively resolve the propriety of the discharge," but instead "should be an initial check against mistaken decisions - essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true...."  *Id.* at 545-46 (citing *Bell v. Burson*, 402 U.S. 535, 540 (1971)).  Based on this ruling, other courts have found that employees are not entitled to a pre-termination hearings on the precise grounds for which they are ultimately fired, as long as they are faced with the essential conduct for which they are being terminated.

In *Demarco*, the court relied on *Loudermill* in concluding that "there is no constitutional right to pre-deprivation notice of the grounds used to support discipline" as long as the employee has the "chance to clarify . . . misunderstandings or to convince the employer that termination is unwarranted."  *DeMarco v. Cuyahoga County Dep't of Human Servs*., 12 F. Supp. 2d 715, 719 (N.D. Ohio 1998) (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989)). Therefore, even though the plaintiff received pre-disciplinary notice of charges that differed from those for which he was ultimately terminated, there was no violation of due process.  *Id.* at

34

721.  Because Collins had the opportunity to respond to the email, which served as the basis for his dismissal, it is unimportant that he was fired for an F2 violation (abusive email) as opposed to an F14 violation (discrimination).  As in *DeMarco*, there is no due process violation because Plaintiff got an opportunity to "present his side of the story."  *Id.* at 720.


## V. CONCLUSION

For the reasons discussed above, this Court **GRANTS** Defendants' Motion for Summary Judgment with respect to all Plaintiff's claims against all named Defendants.


       **s/Algenon L. Marbley**
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**


**DATED: September 24, 2007**